UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAMARA CHURCHILL,<br><br>        Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>        Defendant. | Case No. 3:11-cv-05829<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

  Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

  On September 5, 2007, plaintiff filed an application for SSI benefits, and on September 14, 2007, she filed another one for disability insurance benefits, alleging disability as of October

ORDER - 1

31, 2006, due to depression, anxiety and insomnia. See Administrative Record ("AR") 9, 147. Both applications were denied upon initial administrative review on February 6, 2008, and on then again on reconsideration on May 20, 2008. See AR 9, 80, 83, 89, 91.  A hearing was held before an administrative law judge ("ALJ") on November 20, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See AR 21-75.

On January 29, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 9-17.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 3, 2011, making the ALJ's decision defendant's final decision. See AR 1 see also 20 C.F.R. § 404.981, § 416.1481.  On October 7, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3.  The administrative record was filed with the Court on January 17, 2012. See ECF #12.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's residual functional capacity; and (3) in finding her to be capable of both returning to her past relevant work and performing other jobs existing in significant numbers in the national economy.  The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the

ORDER - 2

proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences

ORDER - 3

"logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

ORDER - 4

A.    <u>Dr. Sternes</u>

Plaintiff first challenges the ALJ's following findings:

> Upon a thorough review of the record, Glenn F. Sternes, Ph.D., an impartial medical expert testified that the claimant had a history of treatment for major depressive disorder, and bipolar disorder, and generalized anxiety with obsessive compulsive disorder. However, Dr. Sternes opined the claimant was capable of performing simple tasks and detailed complex tasks. He stated the claimant could work with supervisors and interact with co-workers. Dr. Sternes further opined the claimant had some limitations due to anhedonia and depression but this was unlikely to interfere with her ability to complete a workday, and she had the ability to deal with a low stress position. The undersigned finds this opinion persuasive and consistent with the medical record as a whole. Therefore, great weight is afforded to this opinion.

AR 16. As the parties point out, however, the ALJ's summary of the testimony of Dr. Sternes is not entirely accurate. That testimony reads in relevant part:

> . . . I think [plaintiff] would be able to handle simple tasks as well as the detailed complex tasks . . . looking at her past, she probably enjoys the complexity of tasks and details. She could work with supervisors and interact well with coworkers and the public. I think, though, there is going to be some limitation due to the anhedonia and her depression. She might have some problems in the attentional field, and then also kind of persistence of -- but it might be unlikely she would complete a work day or work without, you know, interruption. And stress -- it also might be a sensitive problem for her right now. So maybe a light stress position would be more appropriate.

AR 46.

Plaintiff argues the ALJ erred in giving great weight to the testimony of Dr. Sternes, which he apparently either misunderstood or misstated in his decision. The Court agrees the ALJ erred here. Clearly, the statement that "it might be unlikely [plaintiff] would complete a work day or work without . . . interruption" offered by Dr. Sternes, is not at all the same as – and, indeed, is directly at odds with – the summary thereof provided by the ALJ (i.e., that her mental limitations were "unlikely to interfere with her ability to complete a workday"). AR 16, 46. Defendant argues that nevertheless, the ALJ "accurately captured the relevant substance" of the

ORDER - 5

above testimony, given the "ultimate conclusion" provided by Dr. Sternes that, taking plaintiff's anhedonia and depression into account, "a light stress position" might be "more appropriate" for her. ECF #17, p. 10 (quoting AR 46).

But there is nothing to indicate Dr. Sternes intended to equate plaintiff's need for "a light stress position" with the unlikelihood that she could complete a workday or workweek. AR 46. Indeed, it is much more reasonable to conclude that Dr. Sternes found plaintiff was limited *both* in her ability to complete a workday or workweek *and* in her ability to handle work stress, given that these two abilities are not at all necessarily equivalent.  Indeed, Dr. Sternes expressly noted that plaintiff's likely inability to complete a workday or work without interruption was due to her "problems in the attentional field" as well as her persistence, rather than to work stress. Id. Given a determination of non-disability generally requires a finding of an ability to perform full-time work, this cannot be said to be a harmless error on the ALJ's part.[1]

B.   Dr. Wheeler

Plaintiff next challenges the following findings made by the ALJ:

> At a psychological/psychiatric evaluation, Dr. Kimberly Wheeler opined in August 2007, the claimant had moderate ability to understand, remember, and follow complex (more than two step) instructions, perform routine tasks, interact appropriately in public contacts, control physical or motor movements and maintain appropriate behavior.  The claimant was assessed with marked limitations in her ability to relate appropriately to co-workers and supervisors, and respond appropriately to and tolerate the pressures and expectations of a normal work setting.  However, the claimant had mild limitations in her ability to understand, remember and follow simple (one or two step)

---

[1] An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (any error on part of ALJ would not have affected "ALJ's ultimate decision."). In addition, as discussed in greater detail below, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform her past relevant work, and thus determined her to be not disabled on that basis. See AR 15-17.  However, "[o]rdinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis [eight hours a day, for five days a week, or an equivalent work schedule].". Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.

ORDER - 6

>instructions, learn new tasks, perform routine tasks, care for self, including personal hygiene and appearance. (Exhibit 2F at 3)  The undersigned finds a portion of this opinion consistent with the medical record.  Therefore, the portion of this opinion that is consistent with the residual functional capacity, as stated below, is afforded some weight.

AR 11-12.  Specifically, plaintiff argues the ALJ here failed to provide specific and legitimate reasons for rejecting the portions of Dr. Wheeler's opinion the ALJ did not adopt.  These include the marked limitations Dr. Wheeler found in plaintiff's ability to relate appropriately to co-workers and supervisors and respond appropriately to and tolerate the pressures and expectations of a normal work setting, and the moderate limitations she found in her ability to understand, remember and follow complex (more than two step) tasks, exercise judgment, make decisions, interact appropriately in public contacts, control her physical or motor movements, and maintain appropriate behavior. See AR 254.

>In terms of plaintiff's mental residual functional capacity, the ALJ found she could:
>
>**. . . perform simple repetitive tasks with the ability to understand, remember, and carry out short and simple instructions.  In addition, she can sustain attention on simple tasks, and is able to maintain a schedule with some direction.  Furthermore, the claimant is able to learn best with visual demonstration and close supervision, and is limited to a low stress environment.**

AR 15 (emphasis in original).  Except for the moderate limitation on performing complex tasks found by Dr. Wheeler – which is adequately covered by the restriction to simple instructions and tasks adopted by the ALJ – the above mental residual functional capacity assessment is at odds with the other mental functional limitations Dr. Wheeler noted set forth above.  Nor did the ALJ provide legitimate, let alone specific, reasons for not adopting those limitations, and, indeed, did not provide any actual reasons for not doing so.  This was error.[2]

---

[2] It is insufficient for an ALJ to reject the opinion of a treating or examining physician by merely stating, without more, that there is a lack of objective medical findings in the record to support that opinion. See Embrey v. Bowen,

ORDER - 7

C.   Dr. Kang

Plaintiff also challenges the sufficiency of the ALJ's rejection of the following additional medical opinion source evidence:

> The claimant underwent a consultative psychological examination in January 2008. The consultative examiner, Supriya Kang, M.D., diagnosed the claimant with major depressive disorder, severe and recurrent, generalized anxiety, and a [global assessment of functioning ("]GAF["]) score] of around 55.[3] Dr. Kang noted that the claimant's impairments were treatable, and her likelihood for recovery was excellent. Dr. Kang opined the claimant was cognitively intact, had good judgment and insight, had the ability to perform simple and repetitive tasks as well as detailed and complex tasks and would enjoy detailed and complex tasks due to her training. In addition, Dr. Kang noted the claimant would be able to accept instructions from supervisors and interact with co-workers and the public. She would be able to perform work activities on a consistent basis. However, Dr. Kang opined that due to the claimant's anhedonia, low energy, and depression that she could not maintain a regular attendance in the workplace, and she could not complete a normal workday or work week. Furthermore, Dr. Kang stated that the claimant's condition at that time would not allow her to deal with the usual stress encountered in a competitive work environment. (Exhibit 3F at 4-5)  The undersigned finds a portion of Dr. Kang's opinion consistent with the medical record. Therefore, the portion of this opinion that is consistent with the residual functional capacity, as stated below, is afforded some weight.

AR 12. Plaintiff again asserts the ALJ failed to provide specific and legitimate reasons for not adopting Dr. Kang's findings regarding her ability to complete a normal workday and workweek

---

849 F.2d 418, 421 (9th Cir. 1988). Here, the ALJ did not even do that, but merely stated he found "a portion of [Dr. Wheeler's] opinion consistent with the medical record," and gave that "portion" of her opinion that was "consistent with the [above mental] residual functional capacity" assessment "some weight." AR 12. Defendant argues the ALJ did not err here, because he went on to point to evidence of medical improvement in the record. See AR 13. But while, as noted above, the Court can draw legitimate inferences from the ALJ's opinion, there is no indication in the ALJ's decision that he actually intended to discount Dr. Wheeler's opinion – or the opinions of Supriya Kang, M.D., and Dan Neims, Psy.D., discussed in greater detail below – on this basis. See AR 11-16. As such, the Court declines to make any such inference here.

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF [score] of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 34).

ORDER - 8

and deal with usual work stress.[4]  For the same reasons the ALJ erred in rejecting that portion of Dr. Wheeler's opinion that was not consistent with his mental RFC assessment, the Court finds the ALJ erred here as well.  That is, the ALJ failed to provide legitimate, let alone specific, reasons for rejecting the additional findings concerning work completion and work stress by Dr. Kang, which are largely consistent or even more restrictive (at least in terms of work stress) than the limitations in the same areas found by Dr. Sternes.

D.  Dr. Neims

Lastly, plaintiff challenges the ALJ's rejection of the following medical opinion source's findings:

> In June 2008, the claimant was evaluated by Dan Neims, Psy.D., who opined the claimant had marked limitations in her ability to exercise judgment and make decisions, and relate appropriately to co-workers and supervisors, interact appropriately in public contacts, respond appropriately to and tolerate the pressure and expectations of a normal work setting.  She had moderate limitations in her ability to understand, remember, and follow complex instructions, learn new tasks, perform routine tasks, and care for self, including personal hygiene and appearance, and control physical or motor movements and maintain appropriate behavior.  Lastly, the claimant had mild limitations in her ability to understand, remember, and follow simple instructions. (Exhibit 9F at 20)  Dr. Neims diagnosed [the] claimant with major depressive disorder, episode recurrent, anxiety NOS, with a GAF [score] of 50,[5] and a possible diagnosis of bipolar disorder. (Exhibit 9F at 18)
>
> A year later, Dr. Neims noted that [the] claimant continued to have major

---

[4] Specifically, Dr. Kang opined in relevant part:

> The claimant would be able to perform work activities on a consistent basis; however, it is unlikely with her anhedonia, low energy, and depression that she currently could maintain regular attendance in the workplace.
>
> It is unlikely that she could complete a normal workday or workweek without interruptions from her psychiatric conditions.
>
> It is unlikely in her current depressed and anxious state that she could deal with the usual stress encountered in competitive work.

AR 265-66.

[5] See England, 490 F.3d at 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

ORDER - 9

>depressive disorder, recurrent, anxiety disorder, bipolar disorder, and post traumatic stress disorder with a GAF of 50. In addition, her functional limitations were assessed as unchanged from her previous psychological evaluation with Dr. Neims. (Exhibit 9F at 6). The undersigned finds this opinion inconsistent with the medical record as a whole. Therefore, no weight is afforded to this opinion.

AR 13. Once more the undersigned agrees with plaintiff that the ALJ's rejection of the opinion of Dr. Neims was wholly insufficient. That is, while it is appropriate for an ALJ to discount the credibility of an examining physician's opinion in light of its inconsistency with other objective medical evidence in the record,[6] the ALJ failed to point out the specific evidence in the record he relied on to do so here. As with Drs. Sternes, Wheeler and Kang, the ALJ's error here was not harmless, as Dr. Neims assessed mental functional limitations that were greater than those – except again for the moderate limitation in understanding, remembering and following complex instructions – adopted by the ALJ in his decision.

II.     <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See id.</u> If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") [SSR] 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine

---

[6] An ALJ need not accept the opinion of even a treating physician, if it is inadequately supported by clinical findings or "by the record as a whole." <u>Batson</u>, 359 F.3d at 1195; <u>Thomas</u>, 278 F.3d at 957; <u>Tonapetyan</u>, 242 F.3d at 1149.

ORDER - 10

whether he or she can do other work. See id.

A claimant's residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ in this case assessed plaintiff with the residual functional capacity to:

> **. . . perform simple repetitive tasks with the ability to understand, remember, and carry out short and simple instructions. In addition, she can sustain attention on simple tasks, and is able to maintain a schedule with some direction. Furthermore, the claimant is able to learn best with visual demonstration and close supervision, and is limited to a low stress environment.**

AR 15 (emphasis in original). In addition, the ALJ found plaintiff had no exertional limitations. See id. Plaintiff argues the ALJ erred in assessing her with this RFC, given the ALJ's errors in evaluating the medical opinion source evidence in the record. The Court agrees that because of those errors, it is far from clear that the ALJ's residual functional capacity assessment fully and accurately describes all of plaintiff's limitations.

III.     The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing her past relevant work as a receptionist. See AR 16. Plaintiff argues the ALJ erred in so finding, again in light of the errors the ALJ committed in evaluating the opinions

ORDER - 11

of the above medical opinion sources, and thus the ALJ's consequent error in assessing her RFC. Plaintiff has the burden at step four to show she is unable to return to his or her past relevant work. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). That burden has been met here because of the ALJ's errors discussed above. That is, it is not at all clear that a proper evaluation of the medical evidence and assessment of plaintiff's RFC, would result in a finding that plaintiff is still capable of performing her past relevant work.

IV.     Step Five of the Sequential Disability Evaluation Process

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same mental limitations as were included in the ALJ's assessment of plaintiff's

ORDER - 12

residual functional capacity. See AR 69.  In response to that hypothetical question, the vocational expert testified that an individual with those limitations – and who had the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 70-71.  In his decision, the ALJ noted the vocational expert's testimony, but made no specific determination of non-disability at this step. See AR 17.

Given the ALJ's errors in evaluating the medical evidence in the record and in assessing plaintiff's residual functional capacity, any step five determination that can be inferred from the ALJ's decision cannot withstand scrutiny, as it is unclear that plaintiff would be able to perform any of the jobs the vocational expert identified because of those errors.  Plaintiff further argues she should be found disabled at step five in light of the marked mental functional limitations she was assessed with by Drs. Sternes, Wheeler, Kang, and Neims.  It is not at all clear, though, that she would be found disabled based on those limitations.  This is because there is no vocational expert testimony in the record establishing that the specific limitations the above medical sources found would result in an inability to perform the jobs identified.  Nor are those medical sources completely in agreement as to the extent of plaintiff's functional limitations.

For example, although Dr. Sternes and Dr. Kang felt it was unlikely that plaintiff could complete a normal workday and workweek (see AR 46, 265-66), neither Dr. Wheeler nor Dr. Neims specifically opined as to whether they believed she would be able to do so (see AR 254, 316, 330).  In addition, the ability to tolerate the pressures and expectations of a normal work setting the latter two medical sources assessed (see id.), is not necessarily the same as the ability to complete a normal workweek – but rather appears to be more akin to the ability to tolerate work stress – nor does it appear that a marked limitation in the former area equate to an inability to perform in that area. See AR 252, 314, 326 (defining "[m]arked" degree of limitation to mean

ORDER - 13

"[v]ery significant interference with basic work-related activities," as opposed to "[s]evere" degree of limitation, which is defined as "[i]nability to perform one or more basic work-related activities").  Lastly, while Dr. Kang found it unlikely plaintiff would be able to deal with usual work stress, as just noted neither Dr. Wheeler nor Dr. Neims opined that plaintiff had *no* ability to do so, and also as discussed above, Dr. Sternes believed that a "light stress position" might be "appropriate". AR 46.

V.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain with respect to the medical evidence in the record, plaintiff's residual

ORDER - 14

functional capacity and her ability to perform her past relevant work and other jobs existing in significant numbers in the national economy, the Court finds remand for further administrative proceedings is appropriate in this case.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of an examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on the crediting of evidence – as in this case for the reasons discussed above – this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. See Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence" – also as in this case again for the reasons discussed above – the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits."[7] Bunnell, 336 F.3d at 1116. Accordingly, the Court declines to apply the credit as true rule here.

---

[7] In addition, the Court notes the ALJ found plaintiff to be not fully credible regarding her allegations of disabling symptoms and complaints (see AR 15-16), which is another reason why remand for further administrative proceedings is proper in this case, rather than a finding of disability based on the crediting of the medical opinion source evidence in the record. While plaintiff objected to the ALJ's credibility determination, she only did so in her reply brief. See ECF #18, pp. 5-7; see also Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered). The same is true with respect to what appears to be plaintiff's step three argument as well. See ECF #18, p. 4.

ORDER - 15

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 7th day of June, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 16